United States District Court
For the District of New Jersey – Newark Vicinage

J'quan Schenck-Faison,                )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )
                                       )
City of Newark,                        )       Docket No.
Officer T.M. Brown,                    )
Sgt. Abraham James,                    )
Det. D. Diaz,                          )
Det. A. Rivera,                        )
Det. M. Maldonado,                     )
Mathew J. Platkin                      )
                                       )
            Defendants.                )

## Complaint

J'quan Schenck-Faison ("Mr. Faison") brings this action against

Defendants, Officer T.M. Brown, Sgt. Abraham James, Det. D. Diaz,

Det. A. Rivera, and Det. M. Maldonado and states as follows:

### Summary Of Civil Rights Case For Unreasonable Search And Seizure, Excessive Force, Denial Of Due Process and Access to Courts, Forced Self-Incrimination And Municipal Liability

1.    The City of Newark continuously and indiscriminating

surveils its citizens' movements through Automated License Plates

Readers (ALPRs) mounted to traffic lights, streetlights and other

municipal property.

1

2.      ALPRs combine cameras and computer software to indiscriminately scan the license plate of every car that passes by and log the time and date of each scan, and the vehicle's coordinates.

3.      On October 24, 2021 an ALPR mounted to traffic light near a night club allegedly recorded the license plate of a silver Acura involved in a "drive by" shooting at 4:00 a.m. in the vicinity of 625 – 627 Ferry Street in Newark.

4.      On November 6, 2021, Newark Police conducted a traffic stop on Mr. Faison because his license plate allegedly generated a "hit" on the ALPR computer system related to the "drive-by" shooting.  But Mr. Faison was not operating his vehicle at that location at the specified date and time.

5.      The Defendants disregarded this fact and prepared an affidavit for Mr. Faison's arrest that rested entirely upon their alleged review ALPR data; however, Defendants intentionally did not include the actual data in their affidavit of probable cause and never provided the data to Mr. Faison or his criminal defense attorney.  This is because the data, assuming it exists, cannot comport with Defendants' affidavit given that Mr. Faison's vehicle was not in the vicinity of the shooting at the relevant time.

6.      Mr. Faison was arrested on November 17, 2021 and

2

incarcerated for approximately 8 days before being released on bail.

7.    For almost two years Mr. Faison was subject to constant anxiety of future incarceration as he duly complied with his bail conditions, which required him to report to Pretrial services in person once every other week and to call the police once a week; he lived with the understanding that any violation would result in further confinement.

8.    Unsurprisingly, the state unilaterally dismissed all criminal charges against Mr. Faison on September 27, 2023 because he was innocent.  He now seeks relief for his unconstitutional arrest, confinement and prosecution because the alleged ALPR data does not exist or, in the alternative, the Defendants knew that the ALPR data did not support Mr. Faison's arrest when he was placed in custody.

## The Parties

9.    Plaintiff, J'quan Schenck-Faison resides in East Orange, Essex County, New Jersey.

10.    The City of Newark is a municipality in Northern New Jersey with offices located at 920 Broad Street, Essex County, New Jersey, 07102, that creates law enforcement policy and provides funding, training, prosecutorial administration, and other resources to the Newark Police Department.

3

11.    Defendant T.M. Brown was employed by the Newark Police Department and was acting under color of state law at all relevant times.  He or she is sued in their individual capacity.

12.    Defendant D. Diaz was employed by the Newark Police Department and was acting under color of state law at all relevant times.  He or she is sued in their individual capacity.

13.    Defendant Sgt. Abraham James was employed by the Newark Police Department and was acting under color of state law at all relevant times.  He is sued in his individual capacity.

14.    Defendant A. Rivera, was employed by the Newark Police Department and was acting under color of state law at all relevant times.  He or she is sued in their individual capacity.

15.    Defendant M. Maldonado, was employed by the Newark Police Department and was acting under color of state law at all relevant times.  He or she is sued in their individual capacity.

16.    Defendant Mathew J. Platkin, is the attorney general of the state of New Jersey and is responsible for creating and implementing policies regarding ALPR data that prejudiced Plaintiff's ability to access the Court and effectuate his constitutional rights.  He is sued in his individual capacity.

4

## Jury Trial Demand

17.    Mr. Faison demands trial by jury on all issues triable by a jury.

## Jurisdiction and Venue

18.    This action arises under 42 U.S.C. § 1983.

19.    Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

20.    Venue is proper in the New Jersey District Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Essex County, Newark.

## Facts

### Automated License Plater Readers And The 4th Amendment

21.    The government's pervasive, indiscriminate and often disparate use of ALPRs raises many serious policy and civil liberty concerns.

22.    Police Officers are capable of querying ALPR results manually and are not confined to any terms of use or audit of their searches.

23.    ALPR's have an extremely high error rate, with one

randomized study demonstrating that "37% of all fixed ALPR hits were misreads – i.e. the ALRP failed to record the proper license plate number.[1] See also *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1042 (9th Cir. 2014)("It is undisputed that the ALPR occasionally makes false "hits" by misreading license plate numbers and mismatching passing license plate numbers with those listed as wanted in the database").

24.     Importantly, law enforcement professionals, including the Newark Police Department and the named Defendants, were aware at the time of Mr. Faison's arrest that ALPRs are prone to high error rates and have a disparate impact on predominately Black and Latino neighborhoods.

25.     However, at the relevant time, the Newark Police Department did not direct or train its officers to avoid first stopping motorists and then arresting them based on ALPR data alone or that ALPR data is less reliable when it is obtained in the dark of night because the ALPR digital camera is more prone to misreads.

## Mr. Faison's Arrest

26.     On October 24, 2021, Mr. Faison was *not* operating his

---

[1] Diaz, Angel; Levinson-Waldman, Rachel; *Automatic License Plate Readers: Legal Status and Policy Recommendations for Law Enforcement Use*, Brennan Center for Justice 2020,

vehicle at 4:00 a.m. in the vicinity of 625 – 627 Ferry Street in Newark.

27.    As the criminal court admitted when it denied pre-trial detention, Mr. Faison has no prior criminal record.

28.    The affidavit of probable cause prepared by Defendant, T.M. Brown, for Mr. Faison's arrest states that officer T.M. Brown, Sgt. James and Det. D. Diaz responded to a confirmed shooting "in the vicinity of 625-627 Ferry Street in Newark, New Jersey.

29.    The officers/Detectives allege that they watched a surveillance video "that depicted the shooting as it unfolded," and that, in sum, "the Mercedes Benz van being operated by the victims is captured on multiple cameras as it leaves 972 Broad Street while the suspects are captured on multiple cameras as they trail behind the victims in a silver Acura…. Upon arriving at 625 Ferry Street the front seat passenger in the Acura discharges a handgun."

30.    Although the Defendant Officers/Detectives were allegedly able to clearly view the Accura on video, which presumably would include the Acura's license plate, the Officers/Detectives access the ALPR database and "identify one Acura that matched the suspect car" displaying Mr. Faison's license plate and that "it was never reported stolen."

31.    The affidavit fails to indicate the date and time that Mr.

7

Faison's license plate was allegedly recorded by the ALPR and does not attach the ALPR report, or incorporate the report's data, into the Affidavit.

32.     The investigating Defendants do not seek a warrant for Mr. Faison's arrest despite allegedly having video evidence of his car stalking another vehicle and someone from within his car discharging a handgun at another vehicle.

33.     On October 24, 2021, the investigating Defendants entered Mr. Faison's license plate into the ALPR database's "hot list" of vehicles that will alert other officers when their patrol cruiser's, which are also equipped with ALPRs, scan his license plate.

34.      On November 6, 2021, Defendants, Det. A Rivera and M. Maldonado executed a motor vehicle stop on Mr. Faison's Accura.

35.     Maldonado and Rivera did not make a reasonable effort to confirm that Mr. Faison or some other wanted person was actually in the vehicle before stopping it.

36.     Maldonado and Rivera approached Mr. Faison's vehicle and told him that they stopped him because his taillight was out.  This was not true; Mr. Faison's taillight was fully operational, and it was daylight when he was stopped.  Rather, Maldonado and Rivera stopped Mr. Faison because of a false ALPR alert.

37.    Maldonado and Rivera lied to Mr. Faison so that he would not realize he was being interrogated in connection with the shooting and to avoid having to Mirandize him.

38.    Maldonado and Rivera detained Mr. Faison until Officer T.M. Brown was contacted and arrived on the scene.

39.    Officer Brown began to interrogate Mr. Faison and similarly did not advise Mr. Faison why he was asking questions about his vehicle, the timing of exterior damage and who drives it.

40.    Not knowing that his answers would be used to incriminate him, Mr. Faison responded to Brown's questions.

41.    After Defendant Brown finished questioning Mr. Faison, he let him leave.  No citation or warning was issued for a missing tail light despite the Affidavit state that "the same vehicle was captured on more than 10 separate cameras firing into the Mercedes Benz."

42.    On November 17, 2021, the Defendant police officers contacted Mr. Faison by telephone and asked him to come to the police station.  They refused to provide a reason.

43.    Mr. Faison, believing he had nothing to fear, went to the police station to determine why Defendants wished to speak with him.

44.    Upon arriving at the station, the Defendants arrested Mr. Faison without explanation.

45.     Thereafter, Mr. Faison spent approximately 8 days in jail until he was released because he had no prior criminal record and because of the weakness of the state's case.

46.     For the next two years, Mr. Faison was subject to pre-trial conditions that required him to check in with law enforcement every week left him with severe anxiety knowing he could be subject to years of confinement.

47.     Neither Defendants nor The City of Newark prosecutor's office ever provided Mr. Faison or his criminal defense attorney the alleged video or ALPR data.

48.     Then, in September of 2023, the State unilaterally dismissed all charges even though there is allegedly a clear video of someone firing a handgun from Mr. Faison's vehicle directly into another occupied vehicle and ALPR data pinpointing Mr. Faison's vehicle at the specified date and time of the shooting.

## The Affidavit of Probable Cause Is Intentionally False

49.     Mr. Faison's vehicle was not at the scene of the shooting at the relevant time and any statement to the contrary is simply not true.

50.     Therefore, the alleged ALPR data either does not exist or,

10

in the alternative, if it does exist, it is yet another example of ALPR technology error that Defendant officers necessarily realized via other evidence. In either event, the Defendants' conduct violated Mr. Faison's 4th amendment rights.

51.    Moreover, none of the Defendants link the extremely visible exterior damage to Mr. Faison's vehicle to that of the vehicle allegedly captured on "ten different surveillance cameras."

52.    It strains belief that a police officer preparing an affidavit for Mr. Faison's arrest that is allegedly based upon video of his vehicle in a drive by shooting would not offer in support of probable cause the fact that both Mr. Faison's vehicle and the vehicle in the video had the exact same damage. This is because the vehicle in the video did *not* have similar damage.

## Legal Claims

### Count I:

**Section 1983 Claim against all Defendants Unreasonable Search and Seizure in Violation of the Fourth Amendment to the United States Constitution**

53.    The allegations above are realleged.

54.    A traffic stop and interrogation is a seizure under the Fourth Amendment.

55.    Mr. Faison's subsequent arrest, incarceration and

11

continued seizure while awaiting trial was the result of the Defendants' intentionally false and misleading statements and omissions set forth in the affidavit of Probable cause for Mr. Faison's arrest.

56.    As a direct and proximate result of the Defendants' unlawful actions and omissions, Mr. Faison has suffered and will continue to suffer damages including, but not limited to, pain and suffering, loss of self-confidence, humiliation and embarrassment, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to dignity and personal wellbeing, and other pecuniary and non-pecuniary losses.

## Count II
### Section 1983 Claim against the City of Newark for Municipal Liability

57.    The allegations above are realleged.

58.    Newark's policy and custom at the relevant time permitted warrantless and false arrests in response to any ALPR "hit", even if there is no corresponding evidence and, worse, where there is conflicting evidence.

59.    At the time of Mr. Faison's arrest, Newark was aware of the ALPR's high error and instances of false arrests related to same yet did nothing to mitigate these risks, such as specific ALPR training or policy implementation.

12

60.    Newark officers were trained and taught that

61.    Newark's ALPR policy and custom effectively vitiates the Fourth Amendment's protection from unreasonable search and seizure.

## Count III

### Section 1983 Claim against All Defendants
### For Violation of the 5th and 14th Amendments

62.    The allegations above are realleged.

63.    The 5th Amendment protects individuals against being involuntarily called as a witness against themselves and privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

64.    The Fifth and Fourteenth Amendments guard against coercing a statement and then using that statement to inflicts a penalty on a suspect.

65.    The Defendants detained Mr. Faison under the pretense of a traffic stop and interrogated him in connection with a known violent crime without mirandizing him.

66.    The Defendants knowingly sought to obviate the

protections afforded by the Fourteenth and Fifth amendments to procure incriminating admissions without providing any context or alerting Mr. Faison that he was target of a criminal investigation.

67.     As a result, Mr. Faison was unable to explain or defend himself nor force Defendants to acknowledge exculpatory evidence.

### Count IV

### Section 1983 Claim For Violation of the
### First Amendment Right of Access to the Courts
### against Mathew J. Platkin and The City of Newark

68.     The allegations above are realleged

69.     This claim is brought against Defendants Mathew Platkin in his individual capacity and the City of Newark.

70.     The Defendants have refused at every turn to provide Mr. Faison with the ALPR data used to arrest and prosecute him, thus denying him access to court.

71.     Mr. Faison properly submitted an OPRA request for "All automated license plate reader (ALPR) data used in connection with the now dismissed criminal complaint W-2021-011299-0714, including any data obtained from the vicinity of 625-627 Ferry Street between 0300 and 0400 hours on October 24, 2021 bearing license plate #J27LXP registered to Jquan Schenck-Faison residing at 104 Midland Avenue East Orange NJ."

14

72.    The City of Newark denied Mr. Faison's request stating, "your request must be denied pursuant to N.J.S.A. 47:1A-3(b) because "where it appears that the information requested may jeopardize the safety of any person, that information shall be withheld."

73.    The City's denial follows Mathew Platkin's October 21, 2022 directive Regulating Use of Automated License Plate Recognition (ALPR) Technology which blanketly prohibits a citizen who was falsely arrested based upon ALPR data from obtaining this data in support of a Section 1983 claim to redress constitutional wrongs.

74.    Is situations where, as here, the State unilaterally dismisses all charges after an arrest and incarceration but before it must turn over exculpatory evidence, Platkin's directive effectively destroys Section 1983's purpose and forecloses an aggrieved person from seeking relief in Court.

75.    In this way, Platkin has created a policy that is both a sword and a shield favoring the State.

76.    The refusal to provide Mr. Faison with the very data that was used as the basis to arrest him denied Mr. Faison his right of access to the courts because it prejudices his Fourth Amendment claim by making direct evidence of intentional false statements in the affidavit for his arrest unavailable.

15

77.    Upon information and belief, if the ALPR data was provided it would establish Defendants' false statements in the affidavit for Mr. Faison's arrest.

## Prayer for Relief

78.    Mr. Faison requests relief against Defendants as follows:

a.  Declare that Defendants violated Mr. Faison's civil rights under 42 U.S.C. § 1983 to be free from unreasonable search and seizure;

b.  Award compensatory damages in amounts to be determined at trial by the jury;

c.  Award punitive damages in amounts to be determined at trial by the jury;

d.  Award Mr. Faison full expenses and reasonable attorney's fees;

e.  Award Mr. Faison prejudgment interest; and

f.  Award such further relief as is deemed appropriate.


Date: November 16, 2023          Respectfully submitted,


                                 /s/ Joseph P. Guzzardo
                                 Joseph P. Guzzardo

16

Guzzardo & Associates LLC
121 S. Broad Street, Ste. 1600
Philadelphia, PA 19107
Telephone: (205) 718-6691
jguzzardo@guzzardolaw.com

Johson and Webbert LLP
1 Bowdoin Mill Island #300
Topsham, ME 04086
Telephone: (207) 623-5110
jguzzardo@work.law

*Attorneys for Plaintiff*

17